**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL SHAW, Derivatively On Behalf Of PARETEUM CORPORATION,<br><br>            Plaintiff,<br><br>v.<br><br>LUIS JIMENEZ-TUÑON, ROBERT LIPPERT, YVES VAN SANTE, ROBERT H. TURNER, EDWARD O'DONNELL, DENIS MCCARTHY, VICTOR BOZZO, and LAURA THOMAS,<br><br>            Defendants,<br><br>-and-<br><br>PARETEUM CORPORATION,<br><br>            Nominal Defendant. | Case No.:   20-740<br><br>**SHAREHOLDER DERIVATIVE COMPLAINT** |

## <u>VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT</u>

Plaintiff Michael Shaw ("Plaintiff"), by Plaintiff's undersigned attorneys, derivatively and on behalf of Nominal Defendant Pareteum Corporation ("Pareteum" or the "Company"), files this Verified Shareholder Derivative Complaint against the officers and directors of the Company for breaches of their fiduciary duties, unjust enrichment, abuse of control, waste of corporate assets, and violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). As for Plaintiff's complaint against Defendants, Plaintiff alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange

Commission ("SEC") filings, wire and press releases published by and regarding Pareteum, legal filings, news reports, securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action that seeks to remedy wrongdoing committed by Pareteum's directors and officers from December 14, 2017 through the present (the "Relevant Period").

2.      During the Relevant Period, the Company built up a backlog of revenue, which was comprised of revenue owed to the Company through its contracts to provide software and other services to its customers.  For example, for the fiscal year ended December 31, 2018, the Company's backlog totaled $615 million.  Many of the customers who purportedly contributed to the Company's backlog during were either greatly exaggerated or even nonexistent.  This information was not revealed in any of the public statements or SEC filings by the Company.

3.      During the Relevant Period, the Individual Defendants (defined below) breached their fiduciary duties by personally making and/or causing the Company to make to the investing public a series of materially false and misleading statements regarding the Company's business, finances, and prospects. Specifically, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements to the investing public that failed to disclose, *inter alia*, that: (a) the Company was unlikely to collect revenue from certain customer transactions; (b) the Company improperly recognized revenue in its financial statements from these customer transactions, in violation of Generally Accepted Accounting Principles ("GAAP"); (c) as a result, the Company's revenue backlog and accounts receivable were

artificially inflated; (d) the Company would ultimately need to restate each of its financial statements issued during the fiscal year ended December 31, 2018, and for the fiscal quarters ended March 31, 2019 and June 30, 2019; and (e) a number of the Company's officers and directors had ties to various failed stock promotions and other schemes, as well as entities associated with known stock manipulator Barry Honig.  As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

## JURIDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1) and Rule 14a-9 of the Exchange Act, 17 C.F.R. § 240.14a-9, and raise a federal question pertaining to the claims made in the Securities Class Actions based on violations of the Securities Act of 1933 and the Exchange Act.

5.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).   Additionally, diversity jurisdiction is conferred by 28 U.S.C. § 1332. Plaintiff and the Individual Defendants are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.      The derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

7.      Venue is proper in this District because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and the Defendants have received substantial compensation in this District by engaging in numerous activities that had an effect in this District.

## PARTIES

**Plaintiff**

8.      Plaintiff Michael Shaw is a current shareholder of the Company. Plaintiff has continuously held Pareteum common stock at all relevant times.  Plaintiff is a citizen of New Jersey.

**Nominal Defendant Pareteum**

9.      The Company is a Delaware corporation with its principal executive offices located at 1185 Avenue of the Americas, New York, New York 10036.  The Company is a citizen of New York and Delaware.

**Director Defendants**

10.      ***Defendant Luis Jimenez-Tuñon*** ("Jimenez-Tuñon") has served as a Company director since March 1, 2017. He also serves as the Chair of the Company's Compensation Committee, and as a member of the Audit and Finance Committee and the Nominating and Corporate Governance Committee.  Upon information and belief, Defendant Jimenez-Tuñon is a resident of Spain.

11.      ***Defendant Robert Lippert*** ("Lippert") has served as a Company director since November 16, 2018.  He also serves as the Chair of the Company's Audit and Finance Committee, and as a member of the Compensation Committee and the Nominating and Corporate Governance Committee.  Upon information and belief, Defendant Lippert is a resident of South Carolina.

12.      ***Defendant Yves van Sante*** ("van Sante") has served as a Company director since June 1, 2014.  He also serves as the Chair of the Company's Nominating and Corporate Governance Committee, and as a member of the Audit and Finance Committee and the Compensation Committee.  Upon information and belief, Defendant van Sante is a resident of Belgium.

13.     Defendants Jimenez-Tuñon, Lippert, and van Sante are herein referred to as the "Director Defendants."

**Officer Defendants**

14.     *Defendant Robert H. Turner* ("Turner") served as the Company's Chief Executive Officer ("CEO") from May 24, 2019, and as the Executive Chairman of the Board from November 16, 2015, until he was terminated from his positions with the Company on November 22, 2019. Upon information and belief, Defendant Turner is a resident of South Carolina.

15.     *Defendant Edward O'Donnell* ("O'Donnell") served as the Company's CFO from January 9, 2017 until November 1, 2019.  On November 1, 2019, Defendant O'Donnell was replaced as CFO by Defendant Thomas, who will serve as interim CFO.  Defendant O'Donnell's status with the Company is currently under review.   Upon information and belief, Defendant O'Donnell is a resident of New York.

16.     *Defendant Denis McCarthy* ("McCarthy") served as the Company's Chief Operating Officer ("COO") from May 24, 2019, until he was terminated on October 9, 2019. Previously, he served as President of the Company from October 1, 2018 until May 24, 2019. Upon information and belief, Defendant McCarthy is a resident of California.

17.     *Defendant Victor Bozzo* ("Bozzo") has served as the Company's CCO since May 24, 2019.  Previously, he served as CEO of the Company from November 1, 2016 until May 24, 2019.  Upon information and belief, Defendant Bozzo is a resident of New York.

18.     *Defendant Laura Thomas* ("Thomas") has served as the Company's interim CFO since November 1, 2019.  Previously, she served as a Company director from July 25, 2017, until she resigned on November 28, 2018.  She has also served as a member of the Company's corporate development and investor relations team since December 2018.  Upon information and belief,

Defendant Thomas is a resident of California.

19.     Defendants O'Donnell, McCarthy, Bozzo and Thomas are herein referred to as the "Officer Defendants."

20.     The Director Defendants and the Officer Defendants are collectively referred to as "Defendants."

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDATS

21.     By reason of their positions as officers and/or directors of the Company, and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Pareteum in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its shareholders so as to benefit all shareholders equally.

22.     Each director and officer of the Company owes to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligations of fair dealing.

23.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein.

24.     To discharge their duties, the controlling shareholder, officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

25.     Each Individual Defendant, by virtue of his or her position as a director and/or

officer, owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Pareteum, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

26.     As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on NASDAQ, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, including the dissemination of false information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful and accurate information.

27.     To discharge their duties, the officers and directors of Pareteum were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of Pareteum were required to, among other things:

## FALSE STATEMENTS MADE BY THE COMPANY

28.     On March 12, 2019, Defendants caused the Company to report earnings for the quarter and fiscal year ended December 31, 2018, reporting $14.3 million in total revenue for the quarter and $32.4 million in total revenue for the fiscal year.

29.     On March 18, 2019, Defendants caused the Company to file a Form 10-K with the SEC, which provided its financial results and position for the fiscal year ended December 31, 2018 "2018 10-K"). The 2018 10-K was signed by Defendants Turner and O'Donnell. The 2018 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Turner and O'Donnell attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

30.     The Company's 2018 10-K stated that the following regarding revenue recognition:

For the mobile solutions services the Company recognizes revenues from customers accessing our cloud-based application suite in two different service offerings, namely managed services and bundled services.

For managed services, revenues are recognized for network administration services provided to end users on behalf of Mobile Network Operators (MNO) and virtual Mobile Network Operators (MVNO's). Managed service revenues are recognized monthly based on an average number of end-users managed and calculated on a pre-determined service fee per user. For bundled services, the Company provides both network administration as well as mobile airtime management services. Revenues for bundled services are recognized monthly based on an average number of end-users managed and mobile air time and calculated based on a pre-determined service fee. Technical services that meet the criteria to be separated as a separate unit of accounting are recognized as the services are performed. Otherwise they are deferred and recognized over the contract term. Our arrangements with customers do not provide the customer with the right to take possession of the software supporting the cloud-based application service at any time.

Telecommunication revenues were recognized when delivery occurred based on a pre-determined rate and number of user minutes and number of calls that the Company has managed in a given month.

Professional services and other revenue include fees from consultation services to support the business process mapping, configuration, data migration, integration

and training. Amounts that have been invoiced are recorded in accounts receivable and in net billings in excess of revenues or revenue, depending on whether the revenue recognition criteria have been met. Revenue for professional and consulting services in connection with an implementation or implantation of a new customer that is deemed not to have stand-alone value is recognized over the contractual period commencing when the subscription service is made available to the customer. Revenue from other professional services that provide added value such as new features or enhancements to the platform that are deemed to have standalone value to the customer or are sold separately from the original hosting arrangement, are deferred and revenue recognition occurs when the feature is activated.

The Company used revenue recognition standards for ASC 605 for the year ended December 31, 2017 and adopted the revenue recognition standards for ASC 606 beginning on January 1, 2018 using the modified retrospective transition method and applied these standards for the full year ended December 31, 2018.

31.    On May 7, 2019, Defendants caused the Company to announce earnings for the first quarter of 2019, reporting $23 million in total revenue.

32.    On May 10, 2019, Defendants caused the Company to file a Form 10-Q with the SEC, which provided its financial results and position for the quarter ended March 31, 2019 (the "1Q 2019 10-Q"). The 1Q 2019 10-Q was signed by Defendants Turner and O'Donnell. The 1Q 2019 10-Q contained signed SOX certifications by Defendants Turner and O'Donnell attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

33.    On August 6, 2019, Defendants caused the Company to announce earnings for the second quarter of 2019, reporting $34.1 million in total revenue.

34.    On August 9, 2019, Defendants caused the Company to file a Form 10-Q with the SEC, which provided its financial results and position for the quarter ended June 30, 2019 (the "2Q 2019 10-Q"). The 2Q 2019 10-Q was signed by Defendants Turner and O'Donnell. The 2Q 2019 10-Q contained signed SOX certifications by Defendants Turner and O'Donnell attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's

internal control over financial reporting and the disclosure of all fraud.

35.     The statements contained above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (a) the Company was unlikely to collect revenue from certain customer transactions; (b) the Company improperly recognized revenue in its financial statements from these customer transactions, in violation of GAAP; (c) as a result, the Company's revenue backlog and accounts receivable were artificially inflated; (d) the Company would ultimately need to restate each of its financial statements issued during the fiscal year ended December 31, 2018, and for the fiscal quarters ended March 31, 2019 and June 30, 2019; and (e) a number of the Company's officers and directors, including Defendants Turner and O'Donnell, had ties to various failed stock promotions and other schemes, as well as entities associated with known stock manipulator Barry Honig.

**THE TRUTH BEGINS TO EMERGE**

36.     On October 21, 2019, Defendants caused the Company to issue a press release that it would restate its previously issued financial statements for full year FY 2018, and the first and second quarter 2019.  The Company's press release stated in relevant part:

> NEW YORK, NY – October 21, 2019 – Pareteum Corporation (Nasdaq: TEUM) today announced that the Company will restate its previously issued consolidated financial statements as of and for the full year ended December 31, 2018, and interim periods ended March 31, 2019 and June 30, 2019. This decision was approved by the Company's Board of Directors upon the recommendation of the Company's Audit Committee, and after consultation with management and the Company's independent registered public accounting firm.
>
> Investors should no longer rely upon the Company's previously released financial statements for the time periods cited above. Similarly, related press releases,

earnings releases, and investor communications describing the Company's financial statements for these periods should no longer be relied upon.

The decision to restate these financial statements is based on the Company's conclusion that certain revenues recognized during 2018 and 2019 should not have been recorded during that period. For certain customer transactions, the Company may have prematurely or inaccurately recognized revenue. These restatements should not impact historical cash or cash equivalents based upon the current review. At the present time, the restatements are expected to impact Revenue, Cost of Service, Operating Income, Net Loss, Accounts Receivable and other Balance Sheet line items. While the Company's analysis is still underway, the Company currently estimates the revenue impact for the full year 2018 to be a reduction of approximately $9 million. For the first half of 2019, the Company currently estimates the revenue impact to be a reduction of approximately $24 million.

37.     On this news, shares of the Company fell $0.4401 per share or over 59% to close at $0.2992 per share on October 22, 2019.

## DAMAGES TO PARETEUM

38.     As a direct and proximate result of Defendants' conduct, the Company will lose and expend many millions of dollars.  Such losses include, but are not limited to, the 1,000,000 shares of Company stock issued to Post Road Group on August 22, 2019 and November 15, 2019 arising out of the Company's failure to satisfy its obligations under the Post Road Credit Facility, as well as the September 20, 2019 public offering of 18.8 million shares of Company stock and 3.8 million purchase warrants.  Each of these offerings had the effect of seriously diluting existing Company shareholders.

39.     Such expenditures include, but are not limited to, legal fees associated with the Securities Class Actions filed against the Company, its former CEO, its former CFO, its CCO, and its former COO.

40.     Further, the costs associated with restating each of the Company's financial statements issued during the fiscal year ended December 31, 2018, and for the fiscal quarters ended March 31, 2019 and June 30, 2019.

## DERIVATIVE ALLEGATIONS

41.     Plaintiff brings this action derivatively and for the benefit of the Company to redress injuries suffered, and to be suffered, as a result of Defendants' breaches of their fiduciary duties as directors and/or officers of the Company, unjust enrichment, abuse of control, waste of corporate assets, and violations of Section 14(a) of the Exchange Act.

42.     Plaintiff is, and has been at all relevant times, a shareholder of the Company. Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

## DEMAND FUTILITY ALLEGATIONS

43.     Plaintiff incorporates by reference and re-alleges each and every allegation stated above as if fully set forth herein.

44.     A pre-suit demand on the Board of the Company is futile and, therefore, excused. At the time of filing of this action, the Board consists of the following four (4) individuals: Defendants Jimenez-Tuñon, Lippert, and van Sante, along with non-party Mary Beth Vitale. Plaintiff needs only to allege demand futility as to two (2) of the four (4) Directors who are on the Board at the time this action is commenced.

45.     Demand is excused as to all of the Director Defendants because each one of them faces, individually and collectively, a substantial likelihood of liability as a result of the scheme they engaged in knowingly or recklessly to make false and misleading statements and omissions of material facts, which renders them unable to impartially investigate the charges and decide whether to pursue action against themselves and the other perpetrators of the scheme.

46.     In complete abdication of their fiduciary duties, the Director Defendants either

knowingly or recklessly participated in making the materially false and misleading statements alleged herein.  The fraudulent scheme was intended to make the Company appear more profitable and attractive to investors.  As a result of the foregoing, the Director Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

**Defendant Jimenez-Tuñon**

47.     Defendant Jimenez-Tuñon has conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Defendant Jimenez- Tuñon also signed, and personally made the false and misleading statements in the 2017 and 2018 10-Ks.  For these reasons, Defendant Jimenez-Tuñon breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

**Defendant Lippert**

48.     Defendant Lippert has served as a Company director since November 16, 2018. Defendant Lippert has conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets.  Defendant Lippert also signed, and thus personally made the false and misleading statements in the 2018 10-K.  For these reasons, Defendant Lippert breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

**Defendant van Sante**

49.     Defendant van Sante has served as a Company director since June 1, 2014. Defendant van Sante has conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets.  Defendant van Sante also signed, and thus personally made the false and misleading statements in the 2017 and 2018 10-Ks.  For these reasons, Defendant van Sante breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

**Defendants Jimenez-Tuñon, Lippert, and van Sante**

50.     Defendants Jimenez-Tuñon, Lippert, and van Sante served on the Company's Audit and Finance Committee during the Relevant Period.  Pursuant to the Company's Audit and Finance Committee Charter, these Defendants were responsible for overseeing, *inter alia*, the Company's financial reporting and disclosure process, the effectiveness of the Company's internal controls, and the Company's compliance with applicable laws, regulations, and accounting standards. These Defendants failed to ensure the integrity of the Company's financial statements and internal controls, and the Company's compliance with applicable accounting standards, as they are charged to do under the Audit and Finance Committee Charter, allowing the Company to engage in improper accounting methods and to file false and misleading financial statements with the SEC.

## FIRST CLAIM

### (Against Defendants for Breach of Fiduciary Duties)

51.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

52.     Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of the Company's business and affairs.

53.     Each of the Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

54.     Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein.  Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of the Company.

55.     In breach of their fiduciary duties owed to the Company, Defendants willfully or recklessly made false and misleading statements and omissions of material fact that failed to disclose, inter alia, that: (a) the Company was unlikely to collect revenue from certain customer transactions; (b) the Company improperly recognized revenue in its financial statements from these customer transactions, in violation of GAAP; (c) as a result, the Company's revenue backlog and accounts receivable were artificially inflated; (d) the Company would ultimately need to restate each of its financial statements issued during the fiscal year ended December 31, 2018, and for the fiscal quarters ended March 31, 2019 and June 30, 2019; and (e) a number of the Company's officers and directors, including Defendants Turner and O'Donnell, had ties to various failed stock promotions and other schemes, as well as entities associated with known stock manipulator Barry Honig.  As a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

56.     Defendants also failed to correct and caused the Company to fail to correct the false and misleading statements and omissions of material fact, rendering them personally liable to the Company for breaching their fiduciary duties.

57.     In breach of their fiduciary duties, Defendants failed to maintain internal controls.

58.     Plaintiff on behalf of the Company has no adequate remedy at law.

**SECOND CLAIM**

**(Against Defendants for Violations of**
**Section 14(a) of the Securities Exchange Act of 1934)**

59.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

60.     Section 14(a) of the Exchange Act provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

61.     Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

62.     Under the direction and watch of the Directors, the 2018 and 2019 Proxy Statements (the "Proxy Statements") failed to disclose, *inter alia*, that: (a) the Company was unlikely to collect revenue from certain customer transactions; (b) the Company improperly recognized revenue in its financial statements from these customer transactions, in violation of GAAP; (c) as a result, the Company's revenue backlog and accounts receivable were artificially

inflated; (d) the Company would ultimately need to restate each of its financial statements issued during the fiscal year ended December 31, 2018, and for the fiscal quarters ended March 31, 2019 and June 30, 2019; and (e) a number of the Company's officers and directors, including Defendants Turner and O'Donnell, had ties to various failed stock promotions and other schemes, as well as entities associated with known stock manipulator Barry Honig.

63.     The false and misleading elements of the Proxy Statements led to the re-election of Defendants Turner, Jimenez-Tuñon, Lippert, Thomas, and van Sante, which allowed them to continue breaching their fiduciary duties to the Company.

64.     The Company was damaged as a result of Defendants' material misrepresentations and omissions in the Proxy Statements.

65.     Plaintiff on behalf of the Company has no adequate remedy at law.

## THIRD CLAIM

### (Against Defendants for Unjust Enrichment)

66.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

67.     By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made, Defendants were unjustly enriched at the expense of, and to the detriment of, the Company.

68.     Defendants either benefitted financially from the improper conduct or received profits, bonuses, stock options, or similar compensation from the Company that was tied to the performance or artificially inflated valuation of the Company, or received compensation that was unjust in light of the Defendants' bad faith conduct.

69.     Plaintiff seeks restitution from Defendants and seeks an order from this Court

disgorging all profits, including from insider transactions, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

70.     Plaintiff on behalf of the Company has no adequate remedy at law.

**FOURTH CLAIM**

**(Against Defendants for Abuse of Control)**

71.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

72.     Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence the Company, for which they are legally responsible.

73.     As a direct and proximate result of Defendants' abuse of control, the Company has sustained significant damages.  As a direct and proximate result of Defendants' breaches of their fiduciary obligations of candor, good faith, and loyalty, the Company has sustained and continues to sustain significant damages.  As a result of the misconduct alleged herein, Defendants are liable to the Company.

74.     Plaintiff on behalf of the Company has no adequate remedy at law.

**FIFTH CLAIM**

**(Against Defendants for Waste of Corporate Assets)**

75.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

76.     As a further result of the foregoing, the Company will incur many millions of dollars of legal liability and/or costs to defend unlawful actions, to engage in internal investigations, and to lose financing from investors and business from future customers who no

longer trust the Company and its products.

77.     Defendants caused themselves to receive excessive compensation from the Company given their misconduct, thereby wasting the Company's assets.

78.     As a result of the waste of corporate assets, Defendants are each liable to the Company.

79.     Plaintiff on behalf of the Company has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFOR** Plaintiff demands judgment in the Company's favor against all Defendants as follows:

(A)     Determining that this action is a proper derivative action maintainable under law, and that demand is excused;

(B)     Awarding, against all Defendants and in favor of the Company, the damages sustained by the Company as a result of Defendants' breaches of their fiduciary duties;

(C)     Directing the Company to take all necessary actions to reform and improve its  corporate governance and internal procedures, to comply with the Company's existing governance obligations and all applicable laws and to protect the Company and its investors from a recurrence of the damaging events described herein;

(D)     Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

(E)     Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable

Dated: January 28, 2020

**GAINEY McKENNA & EGLESTON**


By: *Thomas J. McKenna*
      Thomas J. McKenna
Gregory M. Egleston
**GAINEY McKENNA & EGESTON**
501 Fifth Avenue, 19th Floor
New York, New York 10017
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-aw.com

*Counsel for Plaintiff*

## VERIFICATION

I, MICHAEL SHAW, declare that I have reviewed the Verified Shareholder Derivative Complaint ("Amended Complaint") prepared on behalf of Pareteum Corporation and authorize its filing. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true. I further declare that I am a current holder, and have been a holder, of Pareteum Corporation common stock at all relevant times.

MICHAEL SHAW